# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle, Sr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6798 | **DATE** | 8/12/2002 |
| **CASE TITLE** | Heller Financial, Inc. vs. Lee and VanWhy | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Before the court are Defendants' motion for summary judgment [24-1] and Plaintiff's motion for partial summary judgment [13-1]. The court denies Defendants' motion [24-1] and grants Plaintiff's motion [13-1]. See attached opinion and order. Also before the court is Defendants' motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(f) [23-1]. In light of and consistent with the court's previous ruling on Plaintiff's motion for partial summary judgment, Defendants' motion for additional discovery is denied [23-1].
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 16 2002 date docketed | 44 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HELLER FINANCIAL, INC., )
)
Plaintiff, )
)
v. ) Case No. 01 C 6798
) HONORABLE CHARLES R. NORGLE
HARRY F. LEE and L. JOE VANWHY )
)
Defendants. )

**ORDER AND OPINION**

CHARLES R. NORGLE, District Judge:

Before the court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) and Plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following the reasons, Defendants' motion is denied and Plaintiff's motion is granted.

**I. BACKGROUND**[1]

This diversity action arises from a loan. Defendants, Harry Lee ("Lee") and L. Joe VanWhy ("VanWhy"), along with others, formed a Florida limited partnership, Royal Plaza, Ltd. ("Royal Plaza"), to purchase the Hotel Royal Plaza ("the Hotel") in Orlando, Florida. Additionally, Maddlee, Inc. ("Maddlee"), a Florida corporation, was formed to serve as Royal Plaza's general partner in the purchase of the Hotel.

In order to finance the purchase of the Hotel, Royal Plaza and Maddlee obtained two loans. One loan was from the Bankers Trust Company for approximately $34,200,000. The other loan, that

---

[1] The court takes the facts from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

is the focus of this suit, was from Plaintiff, Heller Financial, Inc. ("Heller"), for approximately $9,900,000. Heller made the loan to Royal Plaza and Maddlee. All parties executed an Equity Loan Agreement ("Agreement") and a Promissory Note ("Note") in connection with the loan. Section 11(b) of the Note states in pertinent part:

> Subject to the provisions set forth below, no Maker shall be personally liable to pay the Loan, or any other amount due, or to perform any obligation, under the Loan Documents, and Holder agrees to look solely to the Assignments and any other collateral heretofore, now, or hereafter pledged by any party to secure the Loan. Notwithstanding the forgoing, each Maker (excluding Robert Ahnert), jointly and severally, shall be personally liable for . . .
> (b) repayment of the Loan and all other obligation of Maker under the Loan Documents in the event of (i) any breach of any of the covenants in Sections 6.3 or 6.4 of the Loan Agreement pertaining to transfers, assignments and pledges of interests and additional encumbrances in the Property, the Partnership and the Corporation . . .

(Pl.'s Mot. for Partial Summ. J., Ex. B, pg. 6.) Section 6.4 of the Agreement provides in pertinent part:

> Each Borrower, the Corporation and the Partnership covenant not to grant or permit the filing of any lien or encumbrance on the Project, the Collateral or the general partnership interest of the Corporation in the Partnership, other than those created by the Senior Loan Documents and leases of Personal Property (as hereinafter defined) expressly permitted in Section 6.6 below, without the prior written consent of Lender; provided, however, the Partnership may, by appropriate proceeding, contest the validity or amount of any asserted lien and, pending such contest, the Partnership shall not be deemed to be in default hereunder if (a) the Partnership has given prior written notice to Lender of the Partnership's intent to so contest, (b) such contest stays the enforcement of the contested lien, and (c) the contested lien is bonded or insured over by the title insurance company or the Partnership has posted security therefor in accordance with the provisions of the Senior Loan Documents and in a manner acceptable to Lender.

2

(Pl.'s Mot. for Partial Summ. J., Ex. A, pg. 23.)

With the financing secure, Royal Plaza and Maddlee were able to finalize the purchase of the Hotel. After the purchase, the Hotel fell under the management of Royal Plaza Management, Inc., which is a separate and unconnected entity from Royal Plaza.[2] Over a five month period of operation, six liens were placed on the Hotel property:

> - Tourist Development Tax Warrant seeking $4,903.88 filed by Orange County, Florida on January 5, 1999;
> - Claim of Lien seeking $46,212.00 filed by Harper Mechanical Corp. on January 13, 1999;
> - Tourist Development Tax Warrant seeking $74,490.58 filed by Orange County, Florida on February 3, 1999;
> - Tourist Development Tax Warrant seeking $3,170.82 filed by Orange County, Florida on February 15, 1999;
> - Claim of Lien seeking $5,958.49 filed by Alpine South Plumbing Corporation, Inc. on March 30, 1999;
> - Tax Warrant seeking $685,914.74 by Florida Department of Revenue on May 21, 1999.

Heller did not consent to the filing of any of the liens, nor did Royal Plaza provide written notice of an intent to contest any of the liens, and no lien was bonded or insured by an insurance company.

As a result of these liens, Heller gave notice on August 12, 1999 to Lee, VanWhy, Royal Plaza, and Maddlee that they had defaulted under the terms of the Agreement and Note. Based on the default, Heller informed Lee, VanWhy, Royal Plaza, and Maddlee that the entire indebtedness under the Note was immediately due and payable and a public sale of the equity interest in Royal

---

[2] Lee and VanWhy argue that they are not responsible for, nor had any knowledge of, the liens placed on the Hotel. Lee and VanWhy justify this argument based on the fact that Royal Plaza Management, Inc, with the knowledge and agreement of Heller, managed the Hotel at the time the liens were entered. This argument is of no consequence because Lee and VanWhy contracted with Heller for the loan and not Royal Plaza Management. Further, Lee and VanWhy cannot claim ignorance of the liens when they are a matter of public record.

Plaza and Maddlee, which had been pledged to Heller as security for the Heller loan, would occur. The sale of the Hotel, part of the interests of Royal Plaza, occurred and Heller received the proceeds.

Heller filed this action claiming that it received only a portion of the debt owed by Royal Plaza and Maddlee. Heller claims that Lee and VanWhy still owe personal obligations under the Agreement and Note. Subsequently, Lee and VanWhy have moved for summary judgment, with Heller filing a motion for partial summary judgment on the issue of liability. These cross-motions are fully briefed and ripe for ruling.

## II. DISCUSSION

### A. Standards for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994). Cases

involving contract interpretation are "particularly suited to disposition by summary judgment." United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios, 220 F.3d 539, 542 (7th Cir. 2000).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c); Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Amercian Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)). Not all factual disputes warrant the denial of summary judgment; only disputes as to facts material to the substantive claim require resolution by trial. Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001) (citing Anderson, 477 U.S. at 247-248).

Lee and VanWhy argue that a summary judgment motion is procedurally inappropriate based on the numerous affirmative defense they raise. However, Lee and VanWhy have failed to argue the

merits of every affirmative defense save one, which the court addresses below. Where the nonmoving party fails to make a showing sufficient to establish the existence of an essential element on which he would bear the burden of proof at trial, summary judgment should be entered against him. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (other citations omitted)). There is no requirement that the moving party negate his opponents claim. Fitzpatrick, 916 F.2d at 1256 (citing Celotex, 477 U.S. at 323). Lee and VanWhy's failure to present evidence in support of their affirmative defenses and sufficient to establish or repudiate material facts dooms their argument. See Caisse Nationale De Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1270 (7th Cir. 1996) (A party seeking to defeat summary judgment is required to wheel out all its artillery to defeat it). The case is ripe for ruling on summary judgment.

### B. Non-Recourse Loan

As stated previously, the loan in this case was for approximately $9 million to help finance the purchase of the Hotel. Heller made the loan to the limited partnership of Royal Plaza, including Lee and VanWhy, and its general partner Maddlee.

All parties agree that Illinois law governs. By definition, a loan is "nonrecourse" where the debtor "is not personally liable for the debt upon default, but rather, the creditor's recourse is solely to repossess the property granted as security for the loan. See Fidelity Mutal Life Ins. Co. v. Chicago Title and Trust Co. of Chicago, No. 92 C 8475, 1994 WL 494897, at *3 (N.D. Ill. 1994) (citing Black's Law Dictionary (Deluxe) 1057 (6th ed. 1999) (defining "nonrecourse debt") (other citations omitted)). However, nonrecourse loans create issues in terms of the motivation of borrowers to act in the best interest of the lender and the lender's collateral. See Portia Owen Morrison and Mark A.

Senn, Carving up the 'Carve-Outs' in Nonrecourse Loans, 9-June Prob. & Prop. 8 (1995). "As a result, lenders identified defaults that posed special risks and carved them out of the general nonrecourse provision." Id. These carve-outs provide the protection that lenders require, personal liability, to insure the incentive to repay the loan and maintain the viability of collateral. There is no dispute that the loan made by Heller to Royal Plaza and Maddlee is a nonrecourse loan. (See Def.'s Mot. for Summ. J., pp. 1, 8; Pl.'s Response to Def.s' Mot. for Summ. J., pp. 3-8.)

Heller argues that within the nonrecourse loan several carve-outs exist which implicate personal liability. Specifically, Heller contends that any lien placed on the Hotel and its property would cause Lee and VanWhy to be personally liable for the remaining debt on the original loan. Lee and VanWhy argue that the carve-outs alleged by Heller are actually liquidated damages but are unenforceable as penalties.

It is clear that within Heller's nonrecourse loan to Royal Plaza and Maddlee particular carve-outs exist. The Note states:

> Subject to the provisions set forth below, no Maker shall be personally liable to pay the Loan, . . . . Notwithstanding the foregoing, each Maker (excluding Robert Ahnert), jointly and severally, *shall be personally liable for* . . . .

(Pl.'s Mot for Summ. J., Ex. B, pg. 6.) (emphasis added). This is unambiguous language. See Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999). "Absent ambiguity, the intention of the parties is to be ascertained by the language of the contract and not by the construction placed on it by the parties. If a court can ascertain its meaning from the plain language of the contract, there is no ambiguity." J.B. Esker & Sons, Inc. v. CLE-PA's P'ship, 757 N.E.2d 1271, 1279 (Ill. App. Ct. 2001).

Further, all parties knew and agreed to the carve-outs of the nonrecourse loan based Mr. Robert Ahnert's ("Ahnert") exemption from personal liability and the structuring of the financing connected to the loan. First, the Note excludes Ahnert's from personal liability. Based on Ahnert's exclusion from personal liability, it stands to reason that Lee and VanWhy understood and agreed to their personal liability under the carve-outs. If they did not agree to such a carve-out they could have themselves arguably insisted on exclusion from personal liability as Ahnert did. Second, as Heller points out, "the loan was secured by the equity interests of the entities that purchased the Hotel, and not by the Hotel property itself." (Pl.'s Response to Def.'s Mot. for Summ. J., pg. 7.) This means Heller is concerned with the successful operation of the Hotel since it affects the value of the collateral that secured the loan. Any lien on the property compromises the equity interests of Royal Plaza and Maddlee. Thus, the carve-out under section 11(b) in the Note, referencing Section 6.4 of the Agreement, is of the utmost importance in acquiring the loan and is known and agreed to by all the parities.

It is painfully clear that the nonrecourse loan from Heller to Royal Plaza and Maddlee included carve-outs. Further, these carve-outs caused Lee and VanWhy to be personally liable. Lee and VanWhy acknowledged and agreed to this.

**C. Liquidated Damages**

Lee and VanWhy argue that the Section 11(b) is a liquidated damages provision that is invalid because it is an unenforceable penalty. This argument fails.

A clause is a liquidated damages provision if: (1) the actual damages from a breach are difficult to measure at the time the contract was made; and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach. Checkers Eight Limited

8

Partnership v. Hawkins, 241 F.3d 558, 561 (7th Cir. 2001) (citing American Nat'l Bank & Trust Co. of Chicago v. Regional Transp. Auth., 125 F.3d 420, 440 (7th Cir. 1997); Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1289-90 (7th Cir. 1985)). The common law principle is that a liquidated damages provision is enforceable when it appears in advance that it would be difficult at the time of breach to compute actual damages and the liquidated damages provision is a good faith attempt to estimate what actual damages would be. Pace Communictions, Inc. v. Moonlight Design, Inc., 31 F.3d 587, 593 (7th Cir. 1994). However, in interpreting provisions which affix the amount of damages in the event of a breach, courts lean toward a construction that excludes the idea of liquidated damages and permits the parties to recover only damages actually sustained. Grossinger Motorcorp, Inc. v. American National Bank and Trust Co., 607 N.E.2d 1337, 1345 (Ill. App. Ct. 1992) (quotations and cites omitted).

Section 11(b) is not a liquidated damages provision because it provides for only actual damages. This action involves a loan made by Heller to Royal Plaza and Maddlee. Royal Plaza, which is made of several partners including Lee and VanWhy, as well as Maddlee agreed and contracted to the loan and its repayment. Heller made the loan with the assurance of Royal Plaza and Maddlee of full repayment, and secured by all the interests of Royal Plaza and Maddlee. Under the terms of the Note, Lee and VanWhy are personally liable for "repayment of the loan" if any liens are placed on the Hotel. (See Pl.'s Mot. for Partial Summ. J., Ex. B, pg. 6.) Heller, in filing this action, seeks the amount left on the loan at the time of the breach. This amount is the actual damage to Heller based on Lee and VanWhy's breach. Since Section 11(b) involves actual damages it cannot be a liquidated damages provision.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied and Plaintiff's motion for partial summary judgement is granted.

IT IS SO ORDERED

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 8/12/02